FRANCISCO DEL MORAL, Plaintiff and Appellant, v. THE NATIONAL CITY BANK OF NEW YORK, ET AL., Defendants and Appellee.

No. 6891. Argued June 4, 1937.—Decided November 4, 1937.

*José Sabater* for appellant. *Oscar Souffront* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

Francisco del Moral y Nadal brought this suit in the District Court of Mayagüez, against The National City Bank of New York, praying for judgment in favor of the heirs of Carmen Nadal, widow of del Moral, in the amount of $15,756, together with interest and costs.

The plaintiff is one of the aforesaid heirs, and since the others did not care to join in the suit, he joined them as defendants. Upon their failure to answer, he asked for and caused their default to be noted. The defendant bank answered. The case went to trial and was decided by a judgment of August 31, 1934, dismissing the complaint with costs. From that judgment the present appeal has been taken.

There is no controversy as to the facts. Both parties are in agreement that the mercantile partnership of Mayagüez, Moral & Co., *S. en C.,* borrowed $12,000 from The National City Bank of New York, and signed three promissory notes payable to the order of such bank, one for $5,000, another for $4,000, and another for $3,000; and that Carmen Nadal, widow of del Moral, then a silent partner (*comanditaria*) in the partnership, guaranteed the transaction by delivering to the bank certain bonds having a value of $15,756 under the conditions which the parties set forth in the following document:

"May 17, 1927.—The National City Bank of New York—55 Wall Street—New York City—Dear Sirs: The undersigned, a silent partner in the firm of Moral & Company, S. en C., of Mayagüez, Porto Rico, hereby pledges and authorizes you to hold and retain as collateral security for any and all existing or future indebtedness of

said firm to you or to any of your Branches together with all expenses of collection which you may incur in connection therewith, the following securities belonging to the undersigned now in your possession in New York City:

"$1,000.00 Kansas City, Memphis & Birmingham, 4s----1934.

"$7,000.00 Baltimore & Ohio, First 4s----1948.

"$1,700.00 Pere Marquette, First 5s----1956.

"$5,000.00 Pere Marquette, First 4s----1956.

"Eleven (11) shares Pere Marquette 5% Preferred Stock.

"In the event that any such indebtedness now due or owing or which may hereafter become due or owing to you by said firm is not paid at maturity, you are hereby authorized to sell all or any part of said securities, with or without notice to the undersigned, either at public or private sale, or at any brokerage board, and after deducting all costs and expenses of every kind for collection, sale or delivery, to apply the proceeds of such sale or sales upon any indebtedness so owing to you by said firm.—You are hereby further authorized, at your option, to apply upon any such indebtedness or other liability of said firm to you, now or hereafter arising, any or all moneys or other property, together with the proceeds thereof, which is now or may hereafter be deposited with or left with you by or for the account or credit of the undersigned or in which the undersigned may have any interest. All remittances and property shall be deemed left with you as soon as put in the transit to you by mail or carrier. —The undersigned expressly waives demand for payment and notice of nonpayment of any indebtedness now due or owing or which may hereafter become due or owing to you by said firm, and hereby consents that you may extend the time of payment of all or any of such indebtedness; also that you may release any security for all or any of such indebtedness which you may have or hold at any time or times without affecting in any manner your rights or interests in any securities or other property of the undersigned so pledged to you as aforesaid.—This agreement is to be construed and enforced in accordance with the law of the State of New York.— (signed and sealed) CARMEN N. VDA. DEL MORAL—(Seal) Witness: (signed) F. DEL MORAL."

After the promissory notes had matured and were unpaid, they were renewed. After they had again fallen due and were unpaid, the bank did not decide to proceed to collection by foreclosure of its collateral security until August,

1931, when the bank addressed a letter to Carmen del Moral, widow of Romero, the guardian of Carmen Nadal, widow of del Moral, whose incapacity had been established since July, 1929, informing her that it was considering a sale of the pledged securities for the collection of the debt unless the same were paid or unless some substantial payment on account was made thereon, within 15 days. The guardian answered as follows:

". . . I have not taken any part in that transaction; but whatever steps may be taken in that transaction by your New York office, will be for your account and risk, in view of the fact that Carmen Nadal has been incapacitated for some time, and the further fact that the obligations which your branch is seeking to collect are at present involved in a nullity proceeding which has not yet been decided."

Upon receipt of the guardian's reply, the bank on October 9, 1931, addressed another letter to her, as follows:

"With reference to your letter of September 10, 1931, we wish to make it clear that in our letter of August 26 we were referring not only to the obligations of Moral & Co., S. en C., and of Carmen Nadal to our Mayagüez branch, which are the obligations now in litigation, but we were also referring to other obligations of the partnership and of Carmen Nadal to our San Juan branch, which are not involved in any litigation whatever, and which amount to $12,000 principal plus interest accrued and unpaid thereon."

Other letters were exchanged between the guardian and the bank in an attempt to settle the pending matters, but without result, until on November 10, 1931, the bank wrote to her:

"We refer to our letter of October 26 last, copy of which we enclose, and we confirm our telegram of today, as follows: 'Referring to our letter of October 26 last, we urgently request you to visit us this week to talk over the matter mentioned therein. If you do not do so, we propose to consider the immediate sale of the securities as we advised you in our letter to you of August 26 last.' We shall appreciate your immediate attention to this matter, . . ." On January 12, 1932, the bank wrote her:

"In accordance with the pledge document dated May 17, 1927, signed by Carmen Nadal, widow of del Moral, we wish to inform you that our New York office has sold the following securities pledged by Carmen Nadal to secure the payment of obligations of Moral &. Co., S. en C. to this bank:

| | |
|---|---:|
| "$1,000.00—Kansas City, Memphis & Birmingham, 4s March 1, 1934, sold at | $696. 67 |
| "$7,000.00—Baltimore & Ohio First Mortgage 4s July 1, 1948 | 5, 796. 78 |
| "$1,700.00—Pere Marquette First A 5s July 1, 1956 | 622. 33 |
| "$5,000.00—Pete Marquette, First B 4s July 1, 1956 | 1, 828. 06 |
| "11 preferred shares of Pere Marquette 5% | 70. 84 |
| "Subtotal | $9, 014. 68 |
| "Less: Deducted for exchange | 22. 54 |
| | $8, 992. 14 |

that is, a net of eight thousand nine hundred ninety two dollars fourteen cents. This amount has been applied as follows:

| | |
|---|---:|
| "To cancel the promissory note of Moral & Co., S. en C. dated March, 1930, in favor of our San Juan branch | $4, 000. 00 |
| "To cover interest on said promissory note from June 2, 1930 to January 5, 1932 | 582. 00 |
| "To cancel the promissory note of Moral & Co. S. en C. dated March 24, 1930, in favor of our San Juan branch | 3, 000. 00 |
| "To cover interest on said promissory note from June 23, 1930 to January 5, 1932 | 420. 75 |
| "Applied on account of the promissory note of Moral & Co., S. en C. for $5,000 in favor of our San Juan branch, thereby reduced by this partial payment to $4,674.36 | 325. 64 |
| "To cover interest accrued on the said $5,000 note from July 26, 1930 to January 5, 1932 | 663. 75 |
| "Total | $8, 992. 14 |

"We are holding the two cancelled promissory notes above mentioned at your disposal."

The bank also communicated its intention to sell the bonds to Moral & Co., *S. en C.*, on December 22, 1930. The plaintiff was a managing partner of that partnership. The bank

explained how the bonds were finally sold through the testimony of its witness Fernando Bobonis, who stated, in substance, that he was a sub-accountant of The National City Bank of New York in San Juan; that he had for about 7 years been in charge of the loan department; that the bonds were sold about the middle of December, 1931, by the New York office, through a broker at the best price obtainable; and that there had subsequently been a drop in the bond market.

The appellant contends in his brief that the bank could not sell the bonds after the pledgor had been declared incompetent. He admits that she authorized the sale prior thereto, but maintains that such authorization should be regarded as a power of attorney, and consequently as terminating when the pledgor became incompetent.

According to the express agreement of the parties, this case must be governed by the laws of the State of New York, and no statute or decision of that state has been cited by the appellant to sustain his position.

When Mrs. Nadal, widow of del Moral, guaranteed the obligations of the partnership of which she was a silent partner (*comanditaria*), she was in full possession of her faculties. At that moment she herself, voluntarily, divested herself of her bonds—personal property—by delivery of the same to the bank to be disposed of in accordance with the agreement. The contract was closed. The authorization to sell—a part of such contract—cannot be deemed to be a power open for the execution of new contract which logically terminates with the death or mental incompetency of the grantor.

The bank took into consideration the fact of Mrs. Nadal, widow of del Moral's incompetency. It was for that reason that it communicated directly with her guardian, and explained to her the situation and its intentions. It has not been shown that the bank had a duty to do anything else under the circumstances.

Appellant further contends that this is a printed unilateral contract which must be interpreted against the one preparing it, citing in support of that contention the case of *Gillet* v. *Bank of America,* 160 N. Y. 549, 55 N. E. 292, in which it was held that "when a contract is in a printed form made by the bank and signed by the client, it will be interpreted in favor of the client and against the bank."

There is no evidence at all that this was a printed contract. On the contrary, it was shown by the original contract itself, brought up after the hearing of the appeal by leave of court, that it was written on a typewriter.

Nevertheless, even if the rule applicable to printed contracts should be here applied since the contract was in fact drafted by the bank, it would still necessarily follow that the bank was secured and was entitled to foreclose its security as it did, because it was accepted as drafted by the pledgor, as it was, who signed it with her own hand with her son and partner in the firm thus guaranteed as witness, and because its provisions are entirely clear and precise.

As to whether the bank's delay prejudiced the interests of Doña Carmen, now the interests of her heir the plaintiff, it is sufficient to say that although it is true that if the bonds had been sold, for example, the year before, more might have realized from them, no unavoidable duty upon the bank to make such a prior sale arises from the facts or the law. The evidence shows that the bank used good judgment when it sold the bonds upon becoming convinced that the drop was a real one and would continue, as it did.

Upon all the circumstances it cannot be said that the price realized by the bank was ruinous, nor is there evidence of any kind that the bank acted in bad faith or was negligent. The interested party at no time asked the bank to sell the securities before it did so. Similarly it has not been shown that Moral & Co., *S. en C.,* was insolvent either at, before, or after the sale of the bonds.

The appeal must therefore be dismissed and the judgment appealed from affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.